IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| **Plaintiff** : | |
| V. : | CRIMINAL NO. 07-355 (JDB) |
| : | |
| **FRANCISCO MARTINEZ** : | |
| : | |
| **Defendant** : | |

## MEMORANDUM IN AID OF SENTENCING

Defendant Francisco Martinez, through counsel, respectfully submits the following Memorandum in aid of his sentencing.

On May 22, 2008, Francisco Martinez will come before this Court to be sentenced pursuant to his guilty plea to unlawful possession with intent to distribute cocaine. The United States Probation Office has determined that Mr. Martinez's sentencing guideline range for the instant case is 46-57 months. The government reports, in its Memorandum in Aid of Sentencing, that it agrees with the probation office's guideline calculations and Mr. Martinez also concurs with these calculations. Despite Mr. Martinez's sentencing guideline range, Mr. Martinez argues, pursuant to 18 U.S.C. § 3553(a), that a sentence of time served is the most reasonable and appropriate sentence in which the court can impose in this matter.

## DISCUSSION

**I.   THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 125 S.Ct. 738 (2005). While holding that

1

district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in <u>Booker</u> held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to <u>Booker</u>, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in <u>Booker</u> – sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the <u>Booker</u> majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After Booker, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

More recently, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. See Rita v. United States, 127 S.Ct. 2456 (2007) and Gall v. United States, 128 S.Ct. 586 (2007). A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. Id.. The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. Id.. By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's

sentence to the thorough adversarial testing contemplated by federal sentencing procedure." <u>Rita</u> at 2465.  It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court recently reemphasized, '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' <u>Gall</u> at 598 (quoting <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996)).

**II.    18 U.S.C. § 3553(a) FACTORS**.

    **A.    Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))**

Unlike the most serious offenses, the crime involved in the instant case is a nonviolent offense.  Additionally, although the instant case involves drugs, Mr. Martinez was not carrying any weapon and he was not in possession of a weapon during the offense.  There is also no evidence that Mr. Martinez possessed a weapon, engaged in any violent acts, or made any threats of violence while he was engaged in any of the relevant conduct associated with this case.  Sadly, Mr. Martinez's involvement in the drug trade is a consequence of his own addiction to drugs.  In about 1996, when Mr. Martinez arrived to the Washington, D.C. area, Mr. Martinez began drinking heavily and he began using unlawful drugs.  Presentence Report (PSR), ¶ 43.  Mr. Martinez developed a particular interest in cocaine and he was abusing this drug daily.  <u>Id.</u>  At some point, it became evident to Mr. Martinez that the only way he could secure the amount of cocaine he desired was to become involved in the distribution of that drug.  Thus, in order to support his drug habit, Mr. Martinez became involved in the instant offense.

Due to his arrest in this case, Mr. Martinez has not used drugs since November of 2007. Mr. Martinez is very happy that he is no longer using drugs and he is determined to remain drug free. Mr. Martinez wishes to fully eradicate his addiction to drugs and he is committed to never distributing drugs again. Mr. Martinez's attitude towards his drug abuse, as well as his willingness to accept responsibility for his conduct in this matter, demonstrate that Mr. Martinez is already doing very well at rehabilitating himself.

With regard to Mr. Martinez's background, he had a difficult and unique childhood. He was born and raised in the country of Cuba. PSR, ¶ 34. Until the age of twelve, Mr. Martinez was raised primarily by his mother. PSR, ¶ 36. Prior to reaching the age of twelve, Mr. Martinez would only see his father occasionally and his father was not providing much support to the family. Id.. The salary Mr. Martinez's mother earned as a teacher in Cuba was inadequate and his family "did not have many comforts in their home." Id.. The financial condition of Mr. Martinez's family was so bleak that Mr. Martinez discontinued his formal education during the seventh grade in order to find work to help assist his family. PSR, ¶ 44. Despite such efforts to assist his mother, when Mr. Martinez was about twelve years of age, the financial strain his mother endured in an effort to support him became too overwhelming. At that point, she could no longer care for Mr. Martinez and Mr. Martinez began living with his father. PSR, ¶ 36. This was an unfortunate result because Mr. Martinez and his father did not get along. Id.. Mr. Martinez did not agree with the political views of his father and he was unhappy with the political and economic situation in Cuba.

By the time Mr. Martinez turned eighteen years old, his dissatisfaction with his country became so profound that he developed a strong desire to leave. Due to such feelings, Mr. Martinez attempted to flee Cuba by boat. PSR, ¶ 37. Mr. Martinez was attempting to enter the United States

but his efforts were unsuccessful. Mr. Martinez was seized while at sea and he was detained by the United States military. PSR, ¶ 37. As a result of his seizure, Mr. Martinez was detained at Guantanamo Bay, Cuba, from 1994 to 1996. Id.. In 1996, Mr. Martinez was finally released and he was allowed to enter the United States and reside with a brother in Miami, Florida. Id..[1] Mr. Martinez lived with his brother for only a few months and then he relocated to the Washington, D.C. area. Id.

As soon as Mr. Martinez arrived to the Washington, D.C. area, he began seeking employment. From about 1996 to 2004, Mr. Martinez was either accepting employment as a day laborer or performing "odd jobs." PSR, ¶ 50. In 2004, Mr. Martinez was fortunate to find a job at the Organization of American States (OAS). PSR, ¶ 49. Mr. Martinez worked as a chauffeur for the OAS and he was proud of his position. As a chauffeur, Mr. Martinez drove dignitaries to various locations in and around the District and he "really enjoyed this job." PSR, ¶ 49. Mr. Martinez's position was terminated "when those specific dignitaries were no longer stationed in Washington, D.C.." Id.. Mr. Martinez "was upset when he was terminated." Id.. After losing his job at the OAS, Mr. Martinez returned to day labor work. PSR, ¶ 48.

Mr. Martinez has fathered two children since residing in the Washington, D.C. area. PSR, ¶ 39 & 40. His first child, who is currently six years of age, is the result of a relationship Mr. Martinez had with a woman residing in Maryland. PSR, ¶ 39. Mr. Martinez's second child, who is three years of age, is with his current wife. PSR, ¶ 40. Mr. Martinez's wife describes him "as a kind man" and she stated that "he never emotionally or physically abused her." Id.. Mr.

---

[1] Mr. Martinez entered the country lawfully and he is currently classified as a permanent resident. PSR, ¶ 38.

Martinez's wife further describes him as a person who "always provided for her and their son by working odd jobs, as kitchen help, and construction jobs." Id..[2] Mr. Martinez's friends describe him in a manner similar to how he is described by his wife.[3] Mr. Martinez's friend, Freddy Gonzalez Arencibia, describes Mr. Martinez as "one of the most honest, sincere and wonderful person that I ever known." Alexis Landa discusses Mr. Martinez's dedication towards his family and friends. Mr. Landa is particularly impressed by Mr. Martinez's dedication to his wife, children and mother. Mr. Landa also notes that Mr. Martinez has "compassion with the less favored in the community (elders, homeless individuals etc.)." Evelin Aleman states that Mr. Martinez ". . . is the kind of person who is always willing to help without asking nothing in return."

Significantly, when Mr. Martinez appears before this court for sentencing, his criminal history will reflect that he has never been previously convicted of a crime. Mr. Martinez will also appear before the court with significant support from his family and from members of the community.

    **B.**    **Factors Pursuant to 18 U.S.C. § 3553(a)(2)**

As with all offenses, Mr. Martinez's misconduct is certainly serious. However, his conduct is not nearly as egregious as conduct involving violence, dangerous threats, or weapons. Moreover, in this particular case, the role substance abuse played in the offense and Mr. Martinez's acceptance of responsibility further mitigate the seriousness of his offense. Due to these factors regarding the seriousness of this offense as well as Mr. Martinez's history and characteristics (e.g. his lack of any

---

[2] Ms. Martinez has also written a letter on Mr. Martinez's behalf. Her letter is attached to this memorandum as Exhibit 1.

[3] Letters from three of Mr. Martinez's friends have been attached as Exhibit 2.

prior criminal convictions, his family responsibilities, his employment history and his overall background), a sentence of time served is a sentence which will adequately promote respect for the law and such a sentence will provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

A sentence of time served will provide ample deterrence for Mr. Martinez and anyone else who may consider committing a similar crime. See 18 U.S.C. § 3553(a)(2)(B). For Mr. Martinez or any other similarly situated person, the hassles and consequences of being prosecuted and obtaining a felony conviction is a huge deterrence. The several months of incarceration associated with a time served sentence in this case is clearly enough additional punishment to deter Mr. Martinez and others from committing this type of offense. Mr. Martinez's incarceration has been very unpleasant for him and he has already learned not to engage in any future conduct which could place him in a custodial situation again.

Mr. Martinez's background and the tremendous support he has from members of the community indicate that a sentence greater than time served is unnecessary in order to protect the public from any further crimes by Mr. Martinez. See 18 U.S.C. § 3553(a)(2)(C). Mr. Martinez has no prior convictions and he immediately accepted responsibility for his conduct in this case. As indicated by the letters which have been written on Mr. Martinez's behalf, Mr. Martinez is known in the community as a person who has great law abiding potential. Also, since Mr. Martinez is determined to end his drug abuse problem, he will no longer have any temptation to be involved with distributing drugs. Under these circumstances, there is absolutely no need to impose any additional incarceration upon Mr. Martinez in order to protect the community.

      **C.**      **The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))**

Because there is no statutory mandatory minimum sentence required in this case and because a sentence within the Sentencing Guidelines is clearly not mandatory, a sentence of time served is a sentencing option which is available to this Court. This Court may also impose a variety of additional restrictions and conditions upon Mr. Martinez if he is sentenced to time served. For instance, the Court may place Mr. Martinez in a halfway house or place him on home detention for any given period. The Court may also impose a substantial community service obligation which will ensure that Mr. Martinez provide some positive assistance to the community.

## **CONCLUSION**

For the reasons discussed above, a sentence of time served is the most reasonable and appropriate sentence in this case. Such a sentence will adequately punish Mr. Martinez as well as afford him an opportunity to return to the community and earn money in order to support his family. Such a sentence, especially if coupled with a community service obligation, will also benefit the community because it will allow Mr. Martinez to provide for his family and because it will require Mr. Martinez to assist the broader community through various community service activities. For these reasons, as well as any other reasons this Court may consider, Mr. Martinez respectfully requests that the court impose a sentence of time served in this case.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
TONY W. MILES
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004

(202) 208-7500

*EXHIBIT 1*

Monday, May 19, 2008

To Whom It May Concern:

    I, Yaritza Vergara the wife of Francisco Martinez write this letter for you to know that Mr. Francisco Martinez is my husband and the father of my son Francisco D'angelo Martinez, who was born on August 19, 2004. Also, I will like to let you know that Mr. Martinez is a very good husband and excellent father and he is very responsible with his son and he is always worry for my son health and well living, I want to tell you that Mr. Martinez is a wonderful father, husband and at the same time good human being. I, personally thanks everything to my husband. At this time I'm going thru a lot with my son speech delay problem and I will like to count with his father help. I think my son and I are lonely right now with the hope to see my husband soon.

Sincerely,

Yaritza Vergara

# EXHIBIT 2

SR JOHN BATES :                                              05 / 08/2008


My name is Freddy Gonzalez Arencibia . I had known Francisco Martinez since I came to this country five years ago and I couldn't believe when I heard about what happened to him and his family.

I 'am writing you this lines, your honor, just to let you know that Francisco Martinez made a big mistake in his life and he is going to pay the consequence of it but as a family man ,as a friend ,as a citizen ,he is a wonderful human been .

I had the opportunity to spent time with him and his family every Sunday where a big group of family will get together to participates of social activities for our children's and also to play baseball ,basketball or other sport activities .He was always polite ,kind ,helpful ,healthy ,he never smoke ,drink or used any drugs .

What can I say? he is human been and we makes mistakes but when I went to see him at the Washington dc jail I saw the regret on his eyes ,he was so ashamed of him self ,he knows he left his family on their own without his love and support ,he has a daughter and a son ,6 and 4 years olds and they really need the love of his father .

I hope this letter will help to show that, I never knew in what Francisco Martinez got involve but I never saw any weird or strange behavior in his social life , he was so far one of the most honest ,sincere and wonderful person that I ever known .

If you have any further questions please fell free to contact me at 571 -268-9031


Thank you so much for taking the time to read this letter


FREDDY GONZALEZ ARENCIBIA

Thursday, May 15, 2008

To Whom It May Concern:

This letter is to confirm that I, Alexis Landa, have met Mr. Francisco Martinez for a good period of time. During that period in which I and Mr. Martinez shared a great friendship relationship I could learn how dedicated he is towards his family and friends; specially his children, spouse and mother. Not to mention his compassion with the less favored in the community (elders, homeless individuals etc.)

The same time, we; Mr. Martinez and I, were able to be part of a great group of friends that organize a large amount of extracurricular activities with recreational purposes e.g.; baseball games, birthdays celebrations, religious meetings and so forth. Being Mr. Martinez always a very important role on these activities.

Mr. Martinez, as I know him, was always a very humorous and charismatic person. His charisma has made him able to build a very solid net of friends whom I would say share my opinion.

For the period of Mr. Martinez absence, we; his friends had missed his presence a good deal. Particularly those of us who keep in contact with him where is located now.

We are bringing this into your attention with the hope that Mr. Martinez would be around us soon. We would appreciate if you can take this in consideration.



Alexis Landa

My name is Evelin Aleman and I'm a friend of Frank Martinez. I know him for more than five years. Our families are close because the kind of person that Frank is.

I'm not only writing this letter as a mother I'm writing this letter as a Cuban as a human being it breaks my heart to think that his family is being separated. You should have see what an excelente father he is. I've seen him with his kids in several ocasions and there is such a bond between them to know how much he is suffering now for them. I think four lines and a paper are not enough to describe that.

Frank is the kind of person who is always willing to help without asking nothing in return. He is so kind he is so charismatic and enthusiastic we all miss him a lot.

I hope my humble opinion will be take into your consideration. We are all praying for his safe and soon return home.

Sincerely & thanks

Evelin Aleman
8243 Single Leaf Ln
Lorton Va 22049
703-5778893